IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY WILLIAMS,

Plaintiff, No. 2: 09-cv-3160 KJN P

vs.

SULLIVAN, et al.,

Defendants. ORDER

_______________________________/

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant Sullivan failed to provide him with medical care in violation of the Eighth and Fourteenth Amendments. The parties consented to the jurisdiction of the undersigned.

Pending before the court is defendant Sullivan's summary judgment motion filed April 30, 2012. (Dkt. No. 50.) Defendant argues that he did not violate plaintiff's constitutional rights and that he is entitled to qualified immunity.

On July 19, 2012, the undersigned issued an order giving plaintiff notice of the requirements for opposing summary judgment motions pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012). The July 19, 2012 order granted plaintiff forty-five days to file an

opposition to defendant's summary judgment motion. On August 6, 2012, plaintiff filed his opposition. On August 9, 2012, defendant filed a reply. After carefully reviewing the record, the undersigned orders that defendant's motion is granted in part and denied in part.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when a moving party establishes that the standard set forth in Federal Rule of Civil Procedure 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

III. Legal Standard for Eighth Amendment Claim

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). According to Farmer v. Brennan, 511 U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Specifically, a determination of "deliberate indifference" involves two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. McGuckin, 974 F.2d at 1059.

First, a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Second, the nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care. Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Id. Second, there must be a resulting harm from the defendant's activities. Id. The needless suffering of pain may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

In order to defeat defendants' motion for summary judgment, plaintiff must "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809 F.2d at 630, that defendants' actions, or failures to act, were "in conscious disregard of an excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d at 332 (citing Farmer, 511 U.S. at 837).

////

////

IV. Legal Standard for Qualified Immunity

"'Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Hunt v. County of Orange, 672 F.3d 606, 615 (9th Cir. 2012) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal alterations omitted).

Although the court was once required to answer these questions in order, the United States Supreme Court has clarified that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. at 236–42.

In resolving the question of qualified immunity, the court views the facts in the light most favorable to the plaintiff. See Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2009).

V. Plaintiff's Claims

This action is proceeding on the verified amended complaint filed September 23, 2010. (Dkt. No. 21.) Plaintiff alleges that on October 23, 2008, he was placed in the administrative segregation ("ad seg") psychiatric unit ("psu"). (Id. at 9.) Plaintiff alleges that

when it was time for his medication to be passed out, Officer Mejia handcuffed plaintiff behind his back. (Id.) Defendant Sullivan, a psychiatric technician, then poured plaintiff's medication down his throat. (Id.) Plaintiff did not see the medication administered by defendant Sullivan. (Id.) Plaintiff soon became ill. (Id.)

Plaintiff told Officer Mejia that he was sick. (Id. at 10.) Officer Mejia called defendant Sullivan. (Id.) Officer Mejia and defendant Sullivan then accused plaintiff of faking illness in order to receive more medicine. (Id.) Defendant Sullivan and Officer Mejia left plaintiff's cell without providing any medical assistance. (Id.) Plaintiff then began kicking and yelling "man down." (Id.) Plaintiff then laid down on his bunk. (Id.) At some point, plaintiff lost consciousness. (Id. at 11.) Plaintiff was then placed in an ambulance and taken to the hospital. (Id.) Plaintiff alleges that at the hospital, he had to have stitches to close a laceration on his head and his stomach was pumped. (Id.)

Plaintiff alleges that defendant Sullivan violated the Eighth Amendment by pouring "unknown" medication down his throat and by failing to provide him with medical attention after he asked for help. (Id. at 12, 14.) Plaintiff suggests that defendant Sullivan either gave him the wrong medication or the wrong dosage. Plaintiff also alleges that defendant's conduct constituted "gross negligence" in violation of the Fourteenth Amendment. (Id.)

VI. Discussion

A. Alleged Violation of Eighth Amendment re: Administration of Medication

Defendant Sullivan argues that he did not act with deliberate indifference to plaintiff's serious medical needs when administering plaintiff's medication. Defendant Sullivan argues that there is no evidence that he intentionally gave plaintiff the wrong medicine or the wrong dose of medicine. Defendant Sullivan also argues that he is entitled to qualified immunity.

In his declaration submitted in support of the pending motion, defendant Sullivan states that he was following procedures established by the California Department of Corrections

and Rehabilitation ("CDCR") when he gave plaintiff his medication:

> 3. As part of my job duties for administering medication to inmates in the PSU, I followed the CDCR's Medication Management Direct Observed Therapy ("DOT") procedures. The DOT procedure for inmates housed in the PSU provided that medications may be placed in an inmate's mouth followed by an adequate amount of water to swallow all pills.
>
> 4. At all times I only dispensed medication that was prescribed by a physician and I only administered the prescribed dose. My general practice was to dispense the medication in a small paper cup by tipping the cup into the inmate's mouth. The inmates was then given a small cup of water.
>
> 5. At all times I followed the medication management procedures in any of my dealings with Mr. Williams and in my dispensation of prescribed medication to him.
>
> 6. The practice with all inmates, including Mr. Williams, was for the inmates to sign an acknowledgment agreement for all medications prescribed. I also carried a card for each inmate which listed the medications and doses for each inmate. It was my practice to tell inmates the medications they were given, if they asked, by reading from their card. I followed this practice in my dealings with Mr. Williams. I never refused to tell Mr. Williams what medications he was administered.

(Dkt. No. 51-1 at 2.)

Defendant Sullivan also provided a copy of the CDCR Medication Management DOT for inmates housed in the PSU. (Dkt. 50-2 at 7.) These procedures provide, in relevant part,

> a. Custody staff shall accompany Nursing staff and provide assistance while medications are being delivered.
> b. The inmate shall be ordered to turn on their cell light and instructed to submit to handcuffs by custody staff.
> c. Staff will advise the Control Booth Officer to open the cell door approximately 8 to 10 inches so medical staff can administer the medication.
> d. A cup of water to swallow oral medications shall be provided.
> e. Licensed Nursing staff shall administer the inmate/patient's medication.
> f. The inmate/patient shall take the oral medications into his mouth followed by an adequate amount of water to swallow all pills.
> g. The inmate/patient shall be observed by the nursing staff member while swallowing the prescribed oral medication. Staff shall verify that the medication(s) has been swallowed by completing a visual check of the inmate's mouth, viewing the empty cup and reasonable measure such as viewing the inmate's hands and empty pockets.

(Id.)

Defendant Sullivan argues that he is entitled to summary judgment because there is no evidence that he intentionally gave plaintiff the wrong medication or dosage. Defendant Sullivan also argues that the evidence shows that plaintiff was told which medications he was given.

In his unverified opposition, plaintiff alleges that when defendant Sullivan came to give him his medication, defendant Sullivan would not let him see the pills inside the cup and defendant Sullivan did not know the names of the medication. (Id. at 3.) Plaintiff alleges that he did not sign the medication agreement, referred to by defendant Sullivan in his declaration, when he arrived in ad seg. (Id. at 8.)

Defendant Sullivan is entitled to summary judgment as to this claim because there is no evidence that defendant intentionally or otherwise knowingly gave plaintiff the wrong medication or an improper dose of medication. While defendant Sullivan's declaration does not address the specific medication he provided to plaintiff on October 23, 2008, he states that he only dispensed medication in the dose prescribed by a physician. Even if defendant Sullivan gave plaintiff either the wrong medication or wrong dose of medication, plaintiff has provided no evidence that defendant Sullivan's conduct was intentional or knowing. In other words, there is no evidence that defendant Sullivan acted with deliberate indifference. Inadvertence or negligence do not establish the requisite state of mind for an Eighth Amendment claim. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

The record contains no facts from which it could be reasonably inferred that defendant Sullivan acted with deliberate indifference. Even assuming defendant Sullivan was unable to identify plaintiff's medication at the time he administered it, as alleged by plaintiff in his unverified opposition, it is not reasonable to infer from these circumstances that defendant Sullivan knew of a risk of harm to plaintiff when he gave him the medication prescribed by a physician.

////

Plaintiff may also be claiming that the application of handcuffs prior to the administration of the medication violated his Eighth Amendment rights. Plaintiff does not allege that he suffered any pain as a result of the handcuffs. Based on these circumstances, the undersigned does not find that the policy requiring plaintiff to be handcuffed before he received his medication violated the Eighth Amendment. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.")

Because defendant Sullivan did not violate plaintiff's Eighth Amendment rights when he administered the medication and had the handcuffs applied, there is no need to further address the issue of qualified immunity. For the reasons discussed above, defendant Sullivan is entitled to summary judgment as to these claims.

B. Alleged Violation of Eighth Amendment: Ignoring Plaintiff's Request

Plaintiff alleges that defendant Sullivan violated the Eighth Amendment by ignoring his request for help when plaintiff became ill after taking his medication. Defendant Sullivan argues that he is entitled to summary judgment as to this claim because there is no evidence that plaintiff fell out of his bunk or injured himself because defendant gave him the wrong medication or dose. In his declaration defendant Sullivan states, in relevant part,

> 7. I was not involved with Mr. Williams in the incident that he alleges in his complaint he was discovered unconscious in his cell. He alleges he fell in his cell. I do not know what caused him to fall or to become unconscious.
>
> 8. The procedures in place that I followed were if an inmate fell, became unconscious or was a "man down," the guards implemented an emergency procedure. Under this procedure a nurse or other emergency medical personnel, was immediately sent to assess the inmate.
>
> 9. I never left Mr. Williams in his cell injured. I never left Mr. Williams in his cell unconscious. I never left Mr. Williams in need of medical care or emergency care. I never ignored Mr. Williams banging and kicking on his cell door seeking medical care.

////

> 10. At no time did I deny care or treatment of Mr. Williams. At no time did I refuse or delay medical care or treatment to Mr. Williams.
>
> ****
>
> 13. I was not aware of any occasion that Mr. Williams became ill after he was given prescribed medication in October 2008 or at any other time.

(Dkt. No. 51-1 at 2-3.)

Whether defendant Sullivan ignored plaintiff's request for medical assistance after he became ill is a disputed material fact. In the verified amended complaint, plaintiff alleges that he informed defendant Sullivan that he was ill. Plaintiff alleges that defendant Sullivan accused him of faking illness in order to receive more medicine. Plaintiff alleges that defendant Sullivan then ignored his kicking and yelling "man down." In his declaration, defendant Sullivan denies knowledge of this alleged incident.

The issue is not whether defendant Sullivan's alleged administration of improper medication caused plaintiff to suffer the injuries alleged, i.e., becoming unconscious, cutting his head, having his stomach pumped. The issue is whether defendant Sullivan's alleged refusal to provide plaintiff with medical attention when he requested it caused or contributed to these injuries. In other words, had defendant Sullivan provided plaintiff with medical attention at the time plaintiff allegedly requested it, would plaintiff have fallen unconscious, cut his head or had his stomach pumped? Defendant Sullivan's summary judgment motion does not address these issues.

Viewing the facts in the light most favorable to plaintiff, the undersigned finds that defendant Sullivan allegedly violated plaintiff's Eighth Amendment rights by refusing his request for medical care. Accordingly, the undersigned turns to the second part of the qualified immunity inquiry: would a reasonable official have understood that ignoring plaintiff's request for medical care violated the Eighth Amendment. Based on the record, the undersigned finds that a reasonable official would have known that ignoring plaintiff's request for medical care violated the Eighth Amendment. Accordingly, defendant Sullivan is not entitled to qualified

immunity as to this claim.

For the reasons discussed above, defendant Sullivan's summary judgment motion is denied as to this claim.

C. Due Process

Plaintiff alleges that defendant Sullivan's conduct violated the Fourteenth Amendment. In essence, plaintiff is alleging a substantive due process claim. The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). Because the rights at issue herein are explicitly protected under the Eighth Amendment, plaintiff's Fourteenth Amendment claims are superfluous. Accordingly, plaintiff's substantive due process claims are dismissed.

D. Official Capacity Damages

Defendant Sullivan moves for summary judgment as to plaintiff's claim for damages against him in his official capacity. "The Eleventh Amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages." Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).

To the extent plaintiff seeks money damages against defendant Sullivan in his official capacity, defendant Sullivan is entitled to summary judgment. However, plaintiff's claim for damages against defendant Sullivan in his individual capacity survives summary judgment.

////

////

////

////

////

Accordingly, IT IS HEREBY ORDERED that defendant Sullivan's summary judgment motion (Dkt. No. 50) is denied as to plaintiff's Eighth Amendment claim based on defendant's alleged failure to provide medical care after plaintiff allegedly informed him that he was ill; defendant's summary judgment motion is granted in all other respects.

DATED: August 27, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

will3160.sj